

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00391-CR

LICELA SOTO-HERNANDEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 121st District Court
Yoakum County, Texas
Trial Court No. 3328, Honorable John A. Didway, Presiding

February 6, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Through her 71-page brief, Licela Soto-Hernandez presents two issues attacking her conviction for intentionally or knowingly injuring a child by act or omission. The child was an eight-month-old infant who appeared at the local emergency room with severe injury to her brain, a body temperature of 92.4 degrees, and a respiratory rate of four breaths per minute, and was "minutes from death." According to the sole caregiver in the home at the time, i.e., appellant, the infant's injuries were caused either by falling from a couch or by a two-year-old sibling. The first issue concerns the trial court's refusal to

sustain a challenge for cause levied against a venire member. Through the second, appellant questions the sufficiency of the evidence underlying her conviction. We affirm.

*Issue Two – Sufficiency*

We address the second issue first, as it would provide appellant the greatest relief if sustained. *See Chaney v. State*, 314 S.W.3d 561, 565 n.6 (Tex. App.—Amarillo 2010, pet. ref'd). Through it, appellant challenges the sufficiency of the evidence to establish the mens rea element of the offense. That is, the evidence allegedly failed to establish that she acted or failed to act intentionally or knowingly. As she said, "the issue is whether an expert opinion, which ignore[s] a broad swath of contradictory science, in concluding that an injury was intentionally inflicted, can support a verdict for intentional or knowing conduct." The experts in question deduced from the severity of the injuries that those injuries were intentionally inflicted. But, their opinions, according to appellant, are insufficient to support a finding that appellant intentionally or knowingly caused the injuries because they either were 1) "based on years of experience, and education in pediatrics" as opposed to "an understanding or application of biomechanics" and 2) contradicted by "objective" scientific evidence illustrating that like trauma could be caused by an accidental fall from the height of 24 inches. So, "[i]n light of the objective evidence before the jury, the current state of the science and the lack of objective support for the expert opinion of ultimate intent, this Court should not consider [the experts'] testimony as probative of intent." We overrule the issue.

Appellant's argument is premised on the supposition that there was only one way to convict her, which consisted of proving she somehow exerted physical force against the child. However, both the jury charge and evidence illustrate otherwise. Moreover,

2

she failed to address those alternate avenues and explain why the evidence would be insufficient to establish her guilt under them.

As evinced by the verdict form, the jury found the appellant "guilty of the offense of intentionally or knowingly ***by act or by omission*** caus[ing] to a child serious bodily injury." (Emphasis added). This was after the trial court charged the jury to "find the defendant guilty of intentionally or knowingly ***by act or omission*** caus[ing] serious bodily injury to a child" if it found appellant 1) "did then and there ***by act***, intentionally or knowingly, cause serious bodily injury to [the child] by striking or hitting the said [child] . . . ***OR***" 2) "did intentionally or knowingly ***by omission*** cause to [the child] serious bodily injury, by failing to provide adequate and necessary protection for the said [child] . . . from serious bodily injury." (Emphasis added).

As can be seen, the jury was told of two paths leading to conviction. One involved an intentional or knowing act and the other, an intentional or knowing omission. In view of the nonspecific nature of the verdict rendered, we do not know what avenue it selected. So, logically, it was incumbent upon appellant to illustrate on appeal why the evidence, if any, underlying each avenue was insufficient. Unless she illustrated how the evidence was not enough to prove an intentional or knowing act or an intentional or knowing omission on her part, we could not say that the jury erred in convicting her for injuring the child.

Her attack simply focused on guilt through intentional or knowing act, and her effort lay with attacking the expert opinions about the injuries being intentionally caused. Nothing was said about guilt through intentional or knowing omission. And, there was evidence of omissions on appellant's part. The first concerns her initial allegation that a

3

supposedly aggressive two-year-old in the household caused the injuries.  Assuming he did, evidence indicates she not only knew of them but also was counseled to keep the infant and the "little bit restless" two-year-old separated.  Though appellant agreed, the older undoubtedly maintained access to the younger while both were under her care, for the injuries could not have occurred otherwise, if appellant's contention were to be afforded any credence.

Evidence of another omission on appellant's part appears of record.  It involves her explanation that the injuries arose from the infant failing from the couch.  Apparently, the child had "frequent falls," consisting of falling off the bed "six times" or falling from "the bed or couch on other occasions."  Moreover, one recent alleged fall from a bed resulted in the infant being taken to a medical clinic after suffering slight head trauma.  And, though appellant was counseled to place the crawling eight-month-old in a crib as opposed to a couch or bed, she continued to do otherwise since the bed and/or couch was more readily available than the crib.

One may commit injury to a child by act or omission.  TEX. PENAL CODE ANN. § 22.04(a)(1) (West 2019).  The offense is a result-oriented one wherein the mens rea relates to the result of the conduct, not to the conduct itself.  *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Harris v. State*, No. 07-10-00452-CR, 2012 Tex. App. LEXIS 9131, at *15 (Tex. App.—Amarillo Nov. 12, 2012, pet. ref'd, untimely filed) (mem. op., not designated for publication).  And, evidence is sufficient to support a conviction for injuring a child by omission where it illustrates either that a defendant intended to cause the injury through her omission or that she was aware that her omission was reasonably certain to cause the injury.  *See Dorch v. State*, Nos. 04-18-00360-CR, 04-18-00361-CR,

4

2019 Tex. App. LEXIS 10308, at *9–10 (Tex. App.—San Antonio Nov. 27, 2019, no pet. h.) (mem. op., not designated for publication). As mentioned above, there is evidence of omissions by appellant encompassing her failure to protect the child. She knew of them and the injury they could cause. Yet, her conduct remained the same, especially with regard to placing the infant on a bed or couch. At the very least, appellant had to explain why the evidence of her repetitive omissions and their potential for injuring the child fell short of proving she was aware that her omissions were reasonably certain to cause injury to the eight-month-old infant. But, she did not. Absent that explanation and given the multiple avenues for conviction permitted under the jury charge, her burden to establish basis for reversing that conviction was not met. So, it matters not whether the experts' opinions were sufficiently probative to establish the requisite mens rea, which means we need not even address the matter. We overrule her issue.

*Issue One – Challenge for Cause*

Through the only other issue before us, appellant maintains that the trial court abused its discretion in denying her challenge for cause levied against venire member Griffin. We overrule the issue.

During voir dire, counsel for appellant asked the venire the same question in different wording. The question dealt with whether the members could consider assessing punishment in lowest applicable range, which included probation. At one point the query consisted of the following question: "Can you consider the minimum range of punishment, which is five years in prison for a first-degree felony, if she's probation-eligible, and consider probation, okay?" At another point it consisted of the following: "It's a big range of punishment. So the question is really: Can you consider the maximum?

Can you consider the minimum?" At another, the following was asked: "Can you consider the bottom range" of punishment if appellant were found guilty of injuring a child. Griffin initially answered "no." This led to defense counsel challenging him for cause.

In short order, the trial court called Griffin to the bench for further questioning. At the bench, the State prefaced a question to Griffin by explaining the range of punishment and the possibility of probation. Then it asked him: "[C]an [you] punish that person as low as five years plus probation or as much as 99 . . . , can you consider that entire range of punishment from the lowest to the highest, or do you simply believe that I can't even think in terms of five years and probation? It's just too – I just can't think that low, and . . . I can't follow the law"? Griffin answered: "No. I can consider it." Then, defense counsel asked him if he could "realistically consider probation as a possible punishment," to which Griffin replied, "No, not with – no." That question and answer was followed by defense counsel asking Griffin, "And you don't know anything about the case. It could be any old case. But, you know, we're just asking: Can you consider it?" Griffin responded with "I'm going to say yes," and reiterated "Yes" when asked if his answer was "yes." At that point, defense counsel said, "[B]ased on the back and forth, I'm still going to maintain my challenge for cause." The trial court overruled it.

We review a trial court's ruling on a challenge for cause with "considerable deference" since it is in the best position to evaluate the prospective juror's demeanor and responses. *Russeau v. State*, 171 S.W.3d 871, 879 (Tex. Crim. App. 2005); *Moore v. State*, No. 07-09-00363-CR, 2011 Tex. App. LEXIS 6826, at \*2–3 (Tex. App.—Amarillo Aug. 23, 2011, no pet.) (mem. op., not designated for publication). That review is undertaken by assessing whether the totality of the voir dire testimony supports the

court's finding that the prospective juror is able or unable to follow the law as instructed. *See King v. State*, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000) (en banc). And, particular deference is due the decision when the prospective juror's answers are vacillating, unclear, or contradictory. *Smith v. State*, 297 S.W.3d 260, 268 (Tex. Crim. App. 2009); *see Perillo v. State*, 758 S.W.2d 567, 577 (Tex. Crim. App. 1988) (en banc) (in the case of a vacillating venire member, the record supports the trial court's ruling either way, which means the decision of the trial court is not wrong).

Irrespective of how appellant may characterize Griffin's "back and forth" answers, they and the record evince a typical example of vacillation by a venire member. And, ultimately, Griffin proffered the ability to consider probation for one convicted of injuring a child. Under those circumstances and given the deference with which we must accord the trial court's ruling, we cannot say that its decision fell outside the zone of reasonable disagreement. We cannot say that it wrongly concluded that Griffin could follow the law and consider the entire range of punishment. *Accord Tabor v. State*, No. 07-15-00239-CR, 2016 Tex. App. LEXIS 3262, at *6–7 (Tex. App.—Amarillo Mar. 30, 2016, no pet.) (mem. op., not designated for publication) (finding denial of challenge for cause was not abuse of discretion when, at the end of individual questioning, venire member, who had vacillated earlier, advised the trial court and counsel that he could and would follow the law). We overrule appellant's first issue.

Having overruled appellant's two issues, we affirm the trial court's judgment.

Brian Quinn
Chief Justice

Do not publish.